Virgil SHANNON et al *v.* Bill G. ANDERSON
et al

80-63                                          598 S.W. 2d 97
Supreme Court of Arkansas
Opinion delivered May 12, 1980
Rehearing denied June 30, 1980

*Gordon & Gordon, P.A.,* for appellants.

*Dan Stripling,* for appellees.

JOHN F. STROUD, Justice. This is a suit between stockholders where both appellants and appellees seek an order restraining the other from interfering in the operation of a closely held manufacturing business. After the chancellor enjoined appellants, both parties amended their pleadings seeking money damages from the other. The court awarded judgment against appellants for $4,874.46, but determined that appellants were entitled to certain assets of the corporation. Appellants appeal from both orders and appellees cross-appeal from the second order. We find no error in the proceedings and affirm the chancellor on all points.

Appellees were operating a tractor manufacturing business in Clinton, Arkansas, incorporated as Anderson's Custom Trailer Manufacturing, Inc. (hereinafter Anderson's). They owned one-half of the stock in the company and the other half was owned by Joe and Nann Dudzik. The Dudziks wanted to completely withdraw from the company and did withdraw the tools and equipment they had put in Anderson's in exchange for their stock. However, they were allowed to keep their stock as "security" until the company paid off a $140,000 SBA loan that the Dudziks had personally endorsed, but at that time they were to transfer their stock to appellees.

Anderson's was in financial difficulty so appellants began talking with appellees during the latter part of 1977 about buying an interest in the business. Without a written agreement, appellants began advancing money to Anderson's in February of 1978 on the assumption that the written agreements would follow. Appellees transferred their stock in Anderson's to appellants, which appellants contend was part of a verbal agreement that would cause the company to be owned 30% by each appellant, 30% by appellee Bill Anderson, and the remaining 10% as treasury stock when the SBA

loan was paid off and the Dudzik stock was surrendered. Appellees contend that the advances were loans to Anderson's and that they transferred their stock to appellants as "security."

There is no dispute that appellees were to devote their time to manufacturing trailers and appellants were to sell the finished products. Due to the SBA loan which limited the borrowing power of Anderson's, appellees suggested that a separate company be formed to handle the sales. In March of 1978, appellants presented a pre-incorporation agreement, but appellees refused to sign, saying they disagreed with several of the provisions. Nevertheless, Bill Anderson (one of the appellees) signed the articles of incorporation for the new company and Homesteader Manufacturing Co., Inc. (hereinafter Homesteader) was formed. Bill Anderson did not put money in Homesteader, but appellants put $3,000 in for him and he was issued one-third of the stock. Appellants continued to put money into both companies until July of 1978 when appellants and the Dudziks held a stockholders and directors meeting of Anderson's without notice to appellees. The stock book of the company was posted to show that appellees were no longer stockholders, a new board of directors was elected omitting appellees, and Bill Anderson was dismissed as President of the company and as an employee. They also crossed out Bill Anderson's name from a prior meeting of Homesteader where he had been elected as a board member and officer. Additionally, appellants transferred the funds of Anderson's to another bank unaccessible to appellees and stored 72 tractors in Conway. They mortgaged 60 of them for $60,000, and allegedly kept the money as repayment of loaned funds. Appellants claim they took this action because an IRS tax lien was discovered, appellees deposited to their personal account some very old payroll checks, appellees were selling tractors and putting the proceeds in Anderson's rather than Homesteader, and appellees were making house payments from the company account.

When appellees refused to turn control of the business over to appellants, appellants brought an action seeking to enjoin appellees from interfering with appellants' operation

of Anderson's. Appellees filed an answer and counterclaim seeking the same relief. On September 21, 1978, after hearing evidence on the issue of who should control Anderson's, the trial court found that there was no meeting of the minds on the proposed pre-incorporation agreement and that appellees should retain control of the business. After several amendments of the pleadings, appellants claimed appellees owed them $46,808.53, and appellees claimed appellants were indebted to them for $25,621.39. Trial was held on December 21, 1978, and after hearing the testimony of the parties and their accountants, and considering the numerous documents presented, the chancellor found that the appellants were indebted to appellees in the amount of $4,-874.46. From the injunction and judgment of the trial court, appellants bring this appeal, and appellees cross-appeal alleging their judgment should be increased by $570.41.

Appellants first contend on appeal that the trial court erred in enjoining appellants from interfering with appellees' operation of Anderson's, and that the injunction should have issued against appellees. Appellants say that they should have control of Anderson's due to the part performance of the unsigned pre-incorporation agreement and the transfer of appellees' stock in Anderson's to them. However, appellees claim that it was never their intention to transfer control of the corporation to anyone, and the stocks were merely to be held by appellants as security for the money advances. Bill Anderson testified, "Really, we never reached an agreement. We never did get down to making what you'd call a firm agreement." The trial court found that "basically while these parties started out to enter into an arrangement which apparently would have been mutually beneficial to them, . . . that agreement was never consummated and never put into practice. . . " Unless the Chancellor's findings are clearly against the preponderance of the evidence, they will not be disturbed. *Digby* v. *Digby,* 263 Ark. 813, 567 S.W. 2d 290 (1978); *Minton & Simpson* v. *McGowan,* 726, 510 S.W. 2d 272 (1974); Arkansas Rules of Civil Procedure, Rule 52(a). We cannot say that the Chancellor's ruling as to who should control Anderson's was clearly against the preponderance of the evidence, for there was sufficient evidence indicating that the parties never actually reached an

agreement, that the delivery of appellees' stock to appellants was not an outright transfer, and that the meeting ousting appellees as officers and directors of Anderson's was not a valid meeting.

Appellants' next five points for error all relate to the financial dealings between the parties and the companies. The adjustments, credits and set-offs are complicated but are in the nature of an accounting between the parties and the companies.

Appellants contend the court erred in failing to recognize a credit due Homesteader for certain parts and attachments obtained from Brinley-Hardy and either used by appellees or returned to Brinley for credit. They claim they should be credited $12,325.30 for these parts and attachments. Appellees controvert the claim and assert that appellants failed to account for two truckloads of these materials which, according to the testimony of appellee Bonnie Anderson, they took from the Anderson plant when Bill Anderson was out of town.

Appellants next contend that the trial court erred in failing to credit Homesteader for an account sold by them to Twin City Ford Tractor Company in the amount of $1,530.75, which was allegedly paid to Anderson's. As none of the parties gave any testimony concerning this payment, the only evidence adduced addressing the issue was an exhibit of appellants' which was marked with the notation "Pd. Anderson." Who made the notation, whether this account was ever actually paid, and if so, to whom, remains very much in dispute.

Appellants also assert that the trial court erred in failing to credit Homesteader in the amount of $38,247.19 for the profits from the sale of their tractors by Bill Anderson. In keeping with the understanding that Anderson's would manufacture the tractors and Homesteader would market them, Anderson's had invoiced several hundred tractors to Homesteader at the wholesale price. Only 141 of the tractors were resold by Homesteader, but around 60 of them were used as collateral by appellants for a $60,000.00 loan from the

First State Bank of Conway. Appellees contend that when appellants mortgaged the 60 tractors and withdrew almost all of the funds form the business account, they were justified in "reselling" some of the tractors themselves, believing that appellants had decided to withdraw from the business. Appellees contend that Homesteader was credited with the wholesale purchase price originally charged for the tractors, but appellants claim the retail profits should be credited to Homesteader on the tractors sold by appellants.

Appellants next allege that the court erred in ruling that Homesteader was entitled to the worthless accounts receivable and in charging Homesteader with them. It appears that neither side to this dispute really wants these accounts receivable, presumably due to the anticipated difficulty in collecting them. Appellants argue that if appellees get to keep the profits realized by the sale of the tractors by Bill Anderson, then appellees also should be charged with a portion of the accounts receivable.

Appellants' final contention concerning the accounting items is that they should be credited with a sum of money resulting from Homesteader's sale of some tractors for which they never received payment, but for which Anderson's allegedly did receive the payment. The testimony did not reflect just how many tractors or what amount of money was involved. Appellants say they requested the trial court to require appellees to provide the amount of payment allegedly received by them in this particular transaction, and they urge that the court erred in failing to require appellees to do so. On the other hand, appellees claim that appellants twice had an opportunity to question appellees about this matter while they were testifying, and they contend that appellants never asked the trial court to require appellees of furnish such information.

The contention of appellees on cross-appeal also concerns the accounting items and they claim they should have been awarded an additional $570.41 in resolution of the dispute over the Brinley parts, mentioned earlier as one of appellants' points of error. In response, appellants assert that the evidence did not necessarily show that they took any of

the Brinley parts in question, and the chancellor's decision is not contrary to the evidence.

The five points for reversal urged by appellants relating to the accounting items and the point raised by appellees on their cross-appeal are purely disputed questions of fact. Not one statute nor case is cited by the parties to support their contentions on these points. The transcript of the proceedings contains 388 pages plus numerous exhibits. Following the testimony of the last witness at the second hearing, the chancellor took the matter under advisement for further review of his notes and the exhibits before rendering his memorandum opinions and decree. The testimony of the parties was contradictory on most points, and the adjustments urged by the accountants for the parties were rarely in harmony. The trial court occupied a better position than this court to observe the demeanor of the witnesses and unless his findings are clearly against the preponderance of the evidence, they will not be disturbed. *Digby* v. *Digby,* supra. It is obvious in deciding the accounting points that the chancellor was attempting to equitably return the parties to their original positions inasmuch as he found they had not reached a meeting of the minds on the proposed agreement. The accounting points are so interrelated and involved with the many transactions between the parties and the companies, we are unwilling to substitute our judgment on any one point for that of the chancellor. There was certainly no error of law, and we cannot say the findings of fact by the chancellor were clearly erroneous.

Appellants' last point alleges that the judgment should have been against Homesteader rather than appellants Virgil Shannon and Dewey Shannon. This action was brought originally as individuals against individuals, but after the injunction against appellants was issued, both Anderson's and Homesteader were allowed to intervene. The chancellor apparently considered the real dispute to be between the individuals and the companies' involvement as merely collateral. Appellants cite no authority for this contention in their brief, and we will not consider assignments of error unless they are supported by convincing argument or authority. *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606 (1977).

The order and decree of the trial court are affirmed.

FOGLEMAN, C.J., and PURTLE, J., dissent.

JOHN I. PURTLE, Justice, dissenting. This is a most difficult case to understand due to the complicated manner in which the records were kept by both parties. However, I do not agree with the majority in the matter of the McCallister credit memorandum No. 3310 which is the same materials as those mentioned in Connor's memoranda Nos. 9, 10, 12, and 21. These will be referred to as the Brinley-Hardy merchandise.

It is not disputed that the Brinley-Hardy materials were returned to Anderson. Conners places the value of these parts and attachments at $12,325 because that was the figure McCallister used. Conners had originally thought the amountshould have been slightly higher. The dispute about these items is whether these items should have been credited to Anderson or Shannon.

The Brinley-Hardy materials did not meet the required specifications but were retained by the Andersons. Some of these parts were used by Anderson and other parts were in their warehouse. Mrs. Anderson claims the Shannons took some of these parts, but the Shannons denied doing so. Shannon did admit hauling off a couple of loads of tractors but stated they were part of the 60 units which were floor planned at Conway by Homesteader. Under this contention, none of the Brinley materials should have been charged to Shannon.

Apparently, the court believed Shannon did not take any Brinley parts. If so, then they should have been charged with invoice No. 3310, which is the same as Conners' credit memos Nos. 9, 10, 11, 12, and 21. Appellants abandon claim to memo No. 11 there by reducing the disputed amount to $12,095.36.

It appears the chancellor erred in not allowing the Shannons credit for invoice No. 3310. If the court did not believe

the Shannons as I think he did, then this part of the decree is against the preponderance of the evidence.

I am authorized to state that Fogleman, C.J., joins me in this dissent.