William E. EVERETT and Elva Lee EVERETT, et ux
*v.* PARTS, INC.

CA 81-73            628 S.W. 2d 875

Court of Appeals of Arkansas
Opinion delivered March 10, 1982

*John B..Driver,* for appellants.

*Highsmith, Gregg, Hart & Farris,* by: *John C. Gregg,* for appellee.

MELVIN MAYFIELD, Chief Judge. This is an appeal from a Chancery Court decree awarding Parts, Inc. judgment against appellants and ordering foreclosure of a mortgage on their land. We affirm.

Parts is a Tennessee distributor of automotive parts and to assure outlets it assists suitable prospects in setting up retail stores. As part of this policy, Parts assisted William and Elva Everett in opening an auto parts store in Mountain View, Stone County, Arkansas.

The Everetts executed a promissory note to a Tennessee bank in the amount of $105,441.00, which included pre-computed interest at 13% per annum — a rate permissible under Tennessee law. Payment was to be made in 84 installments of $1,255.25 per month beginning August 13, 1979. The note, guaranteed by Parts, was secured by a first lien on all of the Everetts' inventory, accounts receivable, furniture, fixtures, and equipment. As additional security, the Everetts executed a mortgage on some Stone County land.

Parts then agreed to sell auto parts to the Everetts to stock the new store. The parties agreed to an open account with a stated credit limit. This agreement was secured by a second lien to Parts on the Everetts' inventory, accounts receivable, et cetera, and by a second mortgage on the Stone County land.

The $69,000.00 principal on the note was distributed as follows: $50,000.00 to Parts for the initial inventory, $10,307.09 to the Everetts for operating capital and expenses, and $8,692.91 to the Bank of Mountain View to discharge a prior mortgage on the Stone County real estate collateral.

The Everetts opened their auto parts store in late summer, but by December had made only one payment on the note to the bank and had become indebted to Parts for $21,627.89 for additional merchandise purchased on open account. The bank then called upon Parts as guarantor to pay the note and on December 19, 1979, it paid $72,304.74 principal and accrued interest, and became entitled to the bank's security rights against the Everetts.

Parts, now with a first and a second lien on the inventory, furniture, and equipment, et cetera, of the store and a first and a second mortgage on the Stone County land, filed suit seeking repossession of all the personal property collateral securing the note and open account and for foreclosure of the real estate. Parts made a repossession bond and under an Order of Delivery the sheriff repossessed all the store inventory, furniture and equipment on February 19, 1980.

The Everetts' answer contained a general denial and also alleged the instruments attached to the complaint and the interest sought on the open account were usurious. (The usury defense, however, was withdrawn on the day of trial.) Later they filed a pleading alleging that certain personal items, not covered by the security agreements, were wrongfully repossessed and should be returned. They also admitted the execution of the note and the receipt and distribution of the $69,000.00 principal but alleged the Commercial Code provisions had not been followed in the repossessing of the personal property collateral. And they asserted that the real property mortgage was subject only to that portion of the $69,000.00 which was used to discharge the prior mortgage on the land and they offered to pay that amount.

The trial court found that the Everetts were indebted to Parts for the amount it had paid to discharge the note to the

bank; for the additional merchandise purchased on open account after the store opened; and for certain repossession costs. The court further found that all property repossessed was covered by the security agreements except some shelving worth $2,500.00 for which credit should be given on the amount owed. The court found that the Everetts should also be given credit for the full market value of the property repossessed. After those credits were allowed, there was a deficiency for which judgment was given and the mortgage was ordered foreclosed and the lands therein sold with the proceeds to be applied to the payment of the judgment.

On appeal the Everetts make four general contentions: (1) because the personal property was repossessed by an action of replevin, the entire indebtedness was cancelled; (2) the real estate mortgage only secured the $8,692.91 used to discharge a prior mortgage on the same land; (3) judgment should not have been allowed for the open account; and (4) the judgment granted was too high.

## The Replevin Action

This first contention appears to be bottomed on the law of a bygone day. Under the conditional sale device, widely used in Arkansas prior to the Uniform Commercial Code, a seller could either sue for the purchase price or repossess the property; but not both. See Mooney, *The Old and the New: Article IX*, 16 Ark. L. Rev. 145, 151 (1961) where, in discussing the effect of the code, it is said:

> The most significant change in the law of conditional sales contracts is the final and conclusive eradication of the doctrine of election of remedies which has dogged conditional sellers and overjoyed conditional buyers almost since the founding of the State of Arkansas.

The repossession of the secured property did not cancel the debt in the instant case. Neither did the fact that the chancellor allowed Parts to keep the property have that effect. While there is a provision in the Code, Ark. Stat. Ann. § 85-9-505 (2) (Supp. 1981), which provides that the parties may assent to the seller's retaining possession of the collateral in satisfaction of the debt, that obviously is not the

situation here. Parts certainly did not propose to keep the repossessed property in satisfaction of the debt.

### The Real Estate Mortgage

The argument that Parts cannot foreclose the real estate mortgage to obtain payment of the indebtedness from the operation of the store is based upon the statement that "the court, in essence, granted judgment on a promissory note that had inventory, etc., as collateral, but ordered the real estate sold to satisfy a judgment on inventory." We think this contention fails to recognize two things.

In the first place, the Tennessee bank had a lien securing its note on both the inventory, et cetera, and the real estate. Parts guaranteed the bank's note and on the Everetts' default, Parts paid the note. That note was introduced in evidence, is in the record, contains an assignment to Parts, and there was testimony that it was delivered by the bank to Parts. "An assignment of the note carries the mortgage." *Bryan* v. *Easton Tire Co.*, 262 Ark. 731, 561 S.W. 2d 79 (1978). "It has long been the rule that when a party secondarily liable upon a note is required to pay it, he is entitled to enforce the obligation against the maker." *K & S International* v. *Howard*, 249 Ark. 901, 462 S.W. 2d 458 (1971). Without doubt, Parts is entitled to foreclose the mortgage for payment of what it paid on the Everetts' note to the Tennessee bank.

In the second place, there is a failure to recognize that the Everetts also executed, directly to Parts, a second mortgage to secure the open account purchases that were made after the initial inventory. A written agreement was executed by the parties under which Parts agreed to sell merchandise to the Everetts on open account, up to a stated amount, and the Everetts agreed to secure their open account indebtedness by a second mortgage on the described real estate (and also by a second lien on the inventory, et cetera). A mortgage was executed which describes the credit agreement and states it is secured by the mortgage.

Any obligation capable of being reduced to a money amount may be secured by a mortgage. Thus, unliquidated debts such as open book accounts and

contingent obligations that are uncertain in amount, such as indemnity bonds, may be secured by a mortgage on real estate. Moreover, promises to build a driveway and a sewer line on mortgagor's land and to build an apartment house have been held to be mortgagable.

Osborne, Nelson & Whitman, *Real Estate Finance Law,* 20 (1979). See also *Hollan* v. *American Bk. of Commerce & T. Co.,* 168 Ark. 939, 272 S.W. 654 (1925); *First Nat'l. Bank* v. *Conway Sheet & Metal,* 244 Ark. 963, 428 S.W. 2d 293 (1968); and *In re Dorsey Electric Supply Co.,* 344 F. Supp. 1171 (1972).

The chancellor found there was a second mortgage on the land to secure the open account. We have no doubt he was right.

### The Open Account

The Everetts say that Parts did not produce an itemized account as required by *Griffin* v. *Young,* 225 Ark. 813, 286 S.W. 2d 486 (1956). That case explains that an itemized account consists of a detailed list of the various items purchased — not merely a statement of the account showing charges for items described by such generic words as "merchandise" or "groceries." We agree that the statements of account introduced here did not constitute an itemized account. But in *Griffin* the judgment was reversed because the court overruled the defendant's motion to require the plaintiffs to make their complaint more definite and certain by itemizing the account on which the suit was brought. Here, no similar motion was filed.

*Griffin* was cited in *Burns* v. *Hall,* 234 Ark. 943, 356 S.W. 2d 235 (1962) where the court held the failure to attach an itemized account to the complaint did not mean that the complaint did not state a cause of action. We agree that Parts had the burden of proving its account and its credit manager testified that he had charge and custody of the company's business records; that there were invoices in the home office to support the statements of account which were introduced; and that the balance due on the open account was $21,627.89. We cannot say the chancellor was clearly erroneous in finding this amount due. Rule 52 (a), Rules of Civil

Procedure; *Shannon* v. *Anderson,* 269 Ark. 55, 598 S.W. 2d 97 (1980).

## *The Amount of Judgment*

The contention about the amount of the judgment is really an objection to the method of disposing of the repossessed inventory. This property was not sold as authorized by Ark. Stat. Ann. § 85-9-504 (Supp. 1981) but at the time of trial, some nine months after repossession, was still in Parts' warehouse in Tennessee. In its brief, Parts says it was awaiting the court's determination of the defense of usury (withdrawn on the day of trial) before making a disposition of the collateral. At the trial Parts proposed to allow eighty percent of the market value of the inventory (at time of repossession) as a credit against the indebtedness. In a letter to the attorneys the court found this was a commercially reasonable method of disposing of the collateral but found the credit allowed should be the full market value of the collateral.

Provisions of the Commercial Code are cited which Parts says expressly or by implication authorize that action by the court. See Ark. Stat. Ann. §§ 85-9-501 (1) (4) (Add. 1961) and 85-9-507 (2) (Supp. 1981). However, if the repossessed security was not disposed of in accordance with the requirements of the code, the Everetts would have a right to recover for any loss caused by the failure to comply. In that event, Parts would have the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law and judgment could be rendered for any deficiency that existed after the debt was credited with that amount. *Universal C.I.T.* v. *Rone,* 248 Ark. 665, 453 S.W. 2d 37 (1970).

The chancellor allowed a credit for the full market value of the repossessed collateral. There was evidence from which he could find that a sale of the property would not have brought that much. We affirm the amount of credit allowed.

Cooper, J., not participating.