WORTHEN BANK & TRUST CO. *v.* Beverly F. ADAIR

CA 84-117                                    690 S.W.2d 727

Court of Appeals of Arkansas
En Banc
Opinion delivered June 5, 1985
[Rehearing denied June 26, 1985.*]

---

* Glaze, J., would grant rehearing.

*Fred E. Bosshart*, for appellant.

*Bill Isaacs*, for appellee.

MELVIN MAYFIELD, Judge. In this case the appellant, Worthen Bank, filed a complaint against John and Beverly Adair to collect $3,070.87, alleged to be the unpaid balance due on charges made on a Visa card issued by the bank. John was never served with summons, but service was obtained on Beverly and she filed a motion to dismiss. The motion contained allegations that she had never received a credit card from the bank, that the complaint was apparently based on an open account but no verified accounting was supplied, and that the only exhibit attached to the complaint clearly indicated that she had no contractual liability for the account sued upon.

A response to the motion to dismiss denied most of the allegations of the motion and stated that the proper way to obtain a verified and itemized statement of the account was by motion for a more definite statement. However, an amendment to the complaint was filed the same day and attached to it were picture copies of the appellant's records showing itemized charges made to the Visa card account and a running total of the amount due.

Eventually the case came on for trial before the judge without a jury and without any hearing on the motion to dismiss. The appellant's only witness was the supervisor of the bank's recovery department who was also the keeper of its records. The witness testified he was familiar with the Visa charge accounts and he identified the application for the Visa card to which the amounts sued for were charged. This application is a form signed by John Adair as the applicant. It contains information about his employment, income, and credit references. About two-thirds of the way down from the top of the form are two boxes. One is to be checked if another person will be liable upon or permitted to use the bank card account. The box is *not* checked. The other box is to be checked if the applicant is relying on another person's income in paying the bank card account. That box *is* checked. However, at the bottom of the form, under the signature of the applicant, on a line designated "other signature," there is the apparent signature of Beverly Adair. Underneath that signature line the form states, "Only if also to be contractually liable." There was no evidence introduced to show the relationship between John and Beverly.

Counsel for appellee, Beverly Adair, objected to the introduction of this application into evidence and the judge stated he would sustain the objection unless there was some evidence that her apparent signature was actually made by her. No such evidence was offered and the appellant rested. The judge then stated that the appellant had failed to prove its cause of action and that the complaint was dismissed. An order signed by the judge concludes with the following paragraph:

> The plaintiff proceeded to present its case against Beverly F. Adair and at the conclusion of the plaintiff's case, the defendant moved to dismiss for failure to present a prima facie case. After an examination of the pleadings filed herein and after listening to the testimony provided by the plaintiff, the court finds that the defendant's motion to dismiss should be and hereby is granted, and the plaintiff's cause of action as against Beverly F. Adair is dismissed in all respects with prejudice.

On appeal, the bank makes three arguments. It first says the court erred in dismissing its complaint because of Ark. Stat. Ann. § 28-202 (Repl. 1979) which provides that in suits on accounts "the affidavit of the plaintiff, duly taken and certified according to law, that such account is just and correct, shall be sufficient to establish the same, unless the defendant shall, under oath, deny the correctness of the account. . . ." *See also Walden* v. *Metzler*, 227 Ark. 782, 301 S.W.2d 439 (1957); *Rice* v. *Kroeck*, 2 Ark. App. 223, 619 S.W.2d 691 (1981). The appellant contends that its amendment to the complaint with the attached copies of the itemized charges made to the Visa card account, plus the original complaint which contained a verification subscribed and sworn to before a notary public, made a prima facie case, under the authority of the statute and cases cited above, since the appellee did not deny the correctness of the account under oath.

The problem is that the copies of the itemized charges all show they were made to John Adair. This may have made a prima facie case against him but no such case was made against Beverly. We have some doubts as to the case against John because the verification of the original complaint would not seem to be sufficient to verify a subsequent amendment to the complaint, and because the itemized charges did not list the various items

purchased but listed only the name of the business that supplied the item or service purchased. *See Griffin* v. *Young*, 225 Ark. 813, 286 S.W.2d 486 (1956), and *Everett* v. *Parts, Inc.*, 4 Ark. App. 213, 628 S.W.2d 875 (1982). But in any event, it seems clear that the itemized charges against John did not make a prima facie case against Beverly. In *Starlight Supply Company* v. *Feris*, 462 S.W.2d 608 (Tex. Civ. App. 1970), the court said:

> The rule which makes a verified account prima facie evidence unless a written denial under oath in conformity with Rule 185 is filed does not apply to or cover transactions between third parties who were strangers to the transaction. (Citations omitted.)

> It matters not that Appellant has pleaded that Appellee owes the account. As stated in *Copeland*, above, where an obligation alleged in the pleading does not conform to the writing exhibited as a basis thereof, the document rather than the pleading controls.

And in *Lee* v. *McCormick*, 647 S.W.2d 735, 740, (Tex. Civ. App. 1983), the court said it is well established that "a verified account is not prima facie evidence, even in the absence of a written denial under oath, as to transactions between the plaintiff and third parties, or plaintiff and parties who were strangers to the original transaction."

Another argument made by the appellant is related to the one just discussed. This contention is that the trial judge erred in refusing to allow appellant to introduce into evidence monthly statements issued on the Visa account. These proffered statements are addressed to John Adair and do not show or make reference to the name of Beverly Adair at any place. Just as the itemized account charged only to John Adair did not make a prima facie case as to Beverly Adair, the monthly statements addressed only to John were not admissible into evidence in the trial of the case against Beverly.

Appellant's third argument on appeal is that the application was admissible into evidence even though there was no testimony that the apparent signature of Beverly was actually made by her. The appellant relies upon Ark. Stat. Ann. § 28-927 (Repl. 1979) which reads as follows:

> Where a writing, purporting to have been executed by one of the parties, is referred to in, and filed with, a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial is begun.

In *J. R. Watkins Med. Co.* v. *Montgomery*, 140 Ark. 487, 215 S.W. 638 (1919), the court held the above statute allowed a written instrument to be introduced into evidence where it met the conditions of the statute but held that the genuineness of the signature could be questioned by evidence and this would make a fact question for the jury; however, the burden would still be on the plaintiff to establish its case by a preponderance of the evidence. *Accord Callaway* v. *Ashby*, 192 Ark. 929, 95 S.W.2d 907 (1936).

In the instant case we believe the application containing the apparent signature of the appellee, which was attached as an exhibit to the complaint, was admissible as the appellee did not deny the genuineness of the signature by an affidavit before trial. However, this does not mean that the trial court erred in dismissing the appellant's complaint. According to the order signed by the judge, the action he took in dismissing the complaint was, in effect, the granting of a motion by appellee for a directed verdict. In *Pritchard* v. *Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 464, 642 S.W.2d 877 (1982), the Arkansas Supreme Court said:

> In determining on appeal the correctness of the trial court's action concerning a motion for a directed verdict by either party, the test is to take that view of the evidence that is most favorable to the party against whom the verdict is sought and to give it its highest probative value, taking into account all reasonable inferences deducible from it, *and to grant the motion only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside. Dan Cowling and Associates* v. *Clinton Board of Education*, 273 Ark. 214, 618 S.W.2d 158 (1981) (Emphasis added.)

We think the trial judge was correct in granting the appellee's motion for directed verdict because he would have had to set aside a verdict for appellant, if one had been returned in its favor, because that verdict would not have been supported by substan-

tial evidence. We think this is true because the application is ambiguous, because it was prepared by the appellant, and because of the construction placed upon the application by the appellant.

The application is a form, obviously printed by the appellant, which contains on one side a number of blanks calling for certain information and with conditions set forth on the opposite side as to the use of the credit card and to the terms of payment for charges made to the account. This constitutes the contract sued upon. The form is so drafted that it is not clear as to how the blanks are to be completed. It contains a line that is designated "Applicant's Signature." However, as we have already indicated, the form asks for information concerning a person other than the applicant.

First are the two boxes. One is to be checked if "another person" will be liable upon or permitted to use the bank card account. The other box is to be checked if the applicant is relying upon "another person's" income in paying the account. Underneath these two boxes are lines designated for the name of the "other person," and for the name of the "employer of the other person." Detailed information about the employment and income of the "other person" is also requested. Then on the last line, underneath the line for the application's signature, is a line for the "other signature," and underneath this last line appears the words "only if also to be contractually liable." Beverly Adair's signature on this line certainly conflicts with checking the box which indicates the applicant is relying on "another person's" income to pay the credit card charges and with failing to check the box which indicates "another person" will be liable on or permitted to use the card. In *Schulte* v. *Benton Savings & Loan Ass'n*, 279 Ark. 275, 281, 651 S.W.2d 71 (1983), the court said:

> It is a familiar rule of construction that the terms of a contract will be construed against the party drafting it, and when there is a doubt as to the meaning of some provision, the doubt is resolved against the party who prepared the contract. (Citations omitted.)

And in *Hall* v. *Weeks*, 214 Ark. 703, 707, 217 S.W.2d 828 (1949), the court said:

Appellee correctly says that when, as here, words are selected by the proponent of a contract, and the phraseology does not convey a clear meaning, uncertainties will be resolved against the one whose form was used if the language is reasonably susceptible of the particular construction.

Finally, in *Craig* v. *Golden Rule Life Ins. Co.*, 184 Ark. 48, 50, 41 S.W.2d 769 (1931), the court quoted from an earlier case as follows:

"It is a well-established principle of law that, in the interpretation or construction of the contract, the construction the parties themselves have placed on the contract is entitled to great weight, and will generally be adopted by the courts in giving effect to its provisions. This is especially true in cases of ambiguity in the written contract."

When we consider that the evidence shows that the appellant prepared the form used to make the application for the credit card involved in this case, that the blanks on the form allow for ambiguity, and that the appellee's liability under the contract sued upon is uncertain, it seems to us that the law requires that the doubt be resolved against the appellant. And when we consider that the itemized charges attached to the appellant's amendment to the complaint do not show any indication that Beverly Adair was considered as contractually liable for the charges made to the credit card account, it seems to us that appellant's own construction of the contract must be given great weight. When viewed in the light of these considerations, we find that even if the trial court had admitted the application into evidence, there would be no substantial evidence—only inconsistent inferences—to support a finding for appellant. *See Aluminum Co. of America* v. *McClendon*, 259 Ark. 675, 687, 535 S.W.2d 832 (1976) (defining substantial evidence). Since the evidence was so insubstantial that a verdict for the appellant would have to be set aside, there was no error in granting appellee's motion for a directed verdict and in dismissing appellant's complaint.

Of course, the trial judge's decision actually turned upon the ruling that the application was not admissible as evidence because the appellee's signature had not been estab-

lished. But we do not reverse the trial judge if he reached the right result, even though he gave an erroneous reason. *Southern Farm Bureau Cas. Ins. Co.* v. *Reed*, 231 Ark. 759, 332 S.W.2d 615 (1960); *Tittle* v. *City of Conway*, 268 Ark. 1126, 599 S.W.2d 412 (1980); *White* v. *Gladden*, 6 Ark. App. 299, 641 S.W.2d 738 (1982).

Affirmed.

CRACRAFT, C.J., and GLAZE, J., dissent.

TOM GLAZE, Judge, dissenting. I respectfully dissent. I would suggest that the majority has made this case more complicated than it really is. The trial court erred in excluding appellant's credit card application which bore both parties' signatures. The trial court found the application inadmissible because there was no proof that the signature on the application was actually that of the appellee. Even the majority admits the trial judge erred, and that under Ark. Stat. Ann. § 28-927 (Repl. 1979), he should have admitted the application into evidence.

Once this Court decided the application was admissible, the only conclusion or result to reach was that the appellant, by introducing the application, made a prima facie case that the appellee was obligated contractually on her husband's account. However, instead of reversing and remanding this cause for further proceedings, the majority tried this case *de novo*. This Court went on to find the credit card application contained an ambiguity, *viz.*, that while appellee presumably signed the application, agreeing she would be contractually liable for her husband's obligations, the same application contained an *uncompleted* section requesting the name of any other person who would be liable upon or permitted to use the applicant's account. After finding that an ambiguity existed, the majority construed the ambiguity against the appellant because the appellant prepared the application. The Court also found, somehow, that the appellant's own construction of the application should be used to resolve the uncertainty or ambiguity against the appellant. I say "somehow" because no evidence was given concerning the parties' intent when the appellant prepared and appellee signed the application form.

Our Court is deciding this case by erroneously administering

a *de novo* review. This is a law case, not one in equity. The trial court admittedly erred and the cause should be reversed and remanded for further proceedings. The trial judge found no ambiguity nor do I believe one exists. At the very least, the appellant is entitled to argue that point below, and because that issue involves a question of fact, appellant and appellee should be permitted to offer evidence and to have the trial judge or jury decide the issue.

Finally, the majority tries to support its decision by mentioning the rule that we do not reverse the trial judge if he reached the right result even though he gave an erroneous reason. That rule simply is not applicable. Here the trial judge clearly erred in failing to admit into evidence the application proffered by the appellant. This Court cannot justify the trial court's erroneous evidentiary ruling by suggesting the appellee would ultimately win anyway because the application was ambiguous, and because it should be construed against the appellant, making the appellee not liable on her husband's account. As I noted earlier, the trial judge mentioned nothing about an ambiguity, and the appellant should be given the opportunity to address that issue. To hold otherwise denies appellant due process. The majority has attempted to weigh and determine the sufficiency of the evidence on the ambiguity issue before the parties have developed evidence on the question. Accordingly, our Court is merely compounding the trial court's error.

I would reverse and remand this cause for further proceedings.

CRACRAFT, C.J., joins in this dissent.