These appeals come to us from a summary judgment in favor of the plaintiff, Colonial Bank, against Central Acceptance Corporation, Raymond Evans, and Bryant Whitmire, Jr., as administrator ad litem of the estate of Sue Evans, deceased.
Central Acceptance was engaged in the business of financing accounts receivable. Colonial Bank entered into a loan agreement with Central Acceptance on April 5, 1979, pursuant to which Colonial made cash advances to Central Acceptance to enable Central to purchase installment sales contracts from third parties. Central Acceptance assigned Colonial its rights in the installment contracts as security for the loans. On June 1, 1979, Raymond Evans, president and sole stockholder of Central Acceptance, and his wife, Sue Evans, signed a guaranty agreement personally guaranteeing repayment of all loans, advances or other indebtedness owed by Central Acceptance to Colonial.
On January 14, 1980, Central Acceptance signed a promissory note for $525,650.14, which represented the balance owed by Central to Colonial as of that date. The note was payable on demand but not later than June 30, 1980. Colonial also loaned Central Acceptance $9,297.63 on December 4, 1981, as evidenced by a note which matured on February 8, 1982. Central Acceptance maintained a checking account with Colonial. Colonial paid overdrafts drawn by Central on the account in the amount of $7,486.44.
In addition to borrowing money on behalf of the corporation, Raymond Evans, in his individual capacity, executed two notes on December 4, 1981, for loans of $7,142.10 and $6,228.73, both of which fell due on February 8, 1982. Colonial also advanced Mr. Evans $2,957.53 by paying overdrafts on his personal checking account.
On September 14, 1982, Raymond Evans, acting on behalf of Central Acceptance and as individual guarantor, signed the following letter addressed to Colonial:
 "I am today settling a [law suit] styled Central Acceptance Corporation and Ray Evans v. The Volirath Company, et al. for a new amount of approximately $240,000.00. The suit involves litigation regarding *Page 146 
certain written contracts between the parties to the suit. My interest in said contracts has been assigned to your bank to secure certain indebtedness which remains outstanding in the approximate amount of $160,000.00 plus accrued interest.
 "The purpose of this letter is to confirm my agreement to first collect the proceeds of the settlement on September 14, 1982 or September 15, 1982 through my attorney in Montgomery and on the same day of collection, retire in full the balance of my indebtedness at your bank. I acknowledge your interest in the proceeds and hereby agree to pay you in full from said proceeds."
On September 24, 1982, Colonial filed the instant action seeking to enjoin Mr. Evans from disposing of the proceeds of the action mentioned in the letter of September 14 and seeking a judgment against Central Acceptance, Raymond Evans, and Sue Evans for the indebtedness owed by Central to Colonial plus $250,000.00 for fraud and misrepresentation.
Colonial amended its complaint when it discovered that Sue Evans had died on June 20, 1982, to add her estate as a party defendant. Contemporaneously, it filed a motion pursuant to §43-2-250 of the Code of Alabama to appoint an administrator ad litem to represent Sue Evans's estate in the proceeding. On November 3, 1982, the trial court appointed Drew Whitmire, Jr. to serve as administrator ad litem.
The defendant's answer admitted executing the notes, but denied that any money was owing to the plaintiff. They also asserted a counterclaim alleging breach of contract, tortious interference with Central's business relationship with a third party, and fraud.
On January 4, 1983, the trial court granted Colonial's motion for a partial summary judgment based on affidavits, depositions, and answers to interrogatories. In its decree the court made detailed findings of fact and entered a final judgment against Central Acceptance for $120,228.03, against the estate of Sue Evans on her personal guarantee of Central's debt for $121,351.00 ($120,228.03 plus an attorney's fee of $1,122.97), and against Raymond Evans for $129,639.24 based on his personal guarantee of Central's debt and his own debt to Colonial. The court found that there was no just reason for delay of entry of final judgment as to each defendant and expressly directed entry of a final judgment. See A.R.Civ.P., 54 (b).
In support of its motion for a summary judgment Colonial filed an affidavit signed by an official of the bank describing the course of dealing between Colonial and Central Acceptance. To the affidavit, Colonial attached copies of notes, computer print-outs, and other bank records recapitulating payments, accrual of interest and other computations with regard to the debt, along with a copy of the signed guaranty agreement.
Raymond Evans's affidavit filed in opposition to the motion read in pertinent part:
 "The note attached to the Bank's Affidavit as Exhibit 8 is the note accepted by the Bank as a replacement for the prior notes. I call attention to the fact that said note was executed as the replacement for all prior notes and is not a renewal of any single note. That said note delivered to and accepted by the Bank is not a renewal of the prior notes referred to in the Affidavit and said note is executed only by Central Acceptance Corporation and not by me.
 "Subsequent to the date of execution of said notes, the debt was reduced by substantial payments as evidenced by handwriting calculation on the last page of Exhibit 9 reflecting a principal and interest balance on February 18, 1982 of $158,931.17 (One Hundred Fifty-Eight Thousand, Nine Hundred Thirty One and 17/100). The amount of credits in reduction of said debt is disputed by me and by Central Acceptance Corporation and all credits thereon were not properly applied to the reduction of said debt.
 "The debt of Central Acceptance Corporation was secured by consumer financial paper which consisted, primarily, of *Page 147 
consumer installment sales contracts, which said contracts were delivered to the plaintiff Bank and which said contracts and the receipts thereof by prior order of this Court have been foreclosed and the security interest therein exercised and it is impossible to determine at this time the value of the consumer paper under which the Bank has exercised its security interest and proceeds of which the Bank is currently collecting. The outstanding balance on said consumer paper is in excess of the debt owed by Central Acceptance Corporation to the Bank. The records reflecting the values of said paper are in the possession of the Bank.
 "The amount of the debt is denied in its totality and the amount owed by Central Acceptance Corporation is not capable of present ascertainment.
". . . .
 "The note of Central Acceptance Corporation attached as Exhibit 8 had not been paid on its due date of June 30, 1980, but payments were made on said note and said note was never called and demand for payment of the unpaid balance thereon made until after September 23, 1982, at which time I was orally told that the Bank demanded its payment in full and would proceed in collection efforts. The lawsuit was filed on September 24, 1982.
 "I deny that there is any amount presently due and owing from Central Acceptance Corporation of which I am the sole stockholder and its President and Chief Executive Officer. The amount owed by Central Acceptance Corporation cannot be ascertained since the Bank has made collections on its debt and refused and declined to tell me what payments it has received and credited to that debt. I specifically deny the statement of account attached to Exhibit 10 of the Motion."
In questioning the propriety of the summary judgment the defendants make two arguments. First, they argue that because the bank had control over the records on which the calculations contained in its affidavit were based, the defendants were unable to determine what, if anything, was owed. Second, they argue that the outstanding balance on the installment sales contracts held by the bank as collateral was in excess of the amount owed. Therefore, the defendants maintain the summary judgment placed the bank in the position of being able to collect twice on the debt.
Rule 56 (f) of the Alabama Rules of Civil Procedure is identical to the Federal rule. It provides that:
 "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
While Rule 56 (f) should be liberally applied to allow parties an ample opportunity to marshal necessary facts to support their respective positions, the defendants in the case at bar did not request a continuance to engage in further discovery, nor did they explain their inability to determine the amount owed to the bank. On November 12, approximately a month before the motion for summary judgment was filed and nearly two months before the court's decree, the bank answered the defendants' interrogatories and filed a response to the defendants' motion to produce, agreeing to "produce all documents that are unprivileged that relate to the transactions between Raymond E. Evans, Sue B. Evans, or Central Acceptance Corporation with the Bank concerning the line of credit and other debts made the basis of this lawsuit." We find nothing in the record indicating that the bank failed to make the documents available to the defendants; nor did the defendants file a motion to compel further discovery of bank records. The defendants cannot forestall a summary judgment by asserting that the opposing party has possession of pertinent documents where the defendants failed to utilize discovery to acquire evidence to rebut the plaintiff's contentions. United States v.Manufacturers Bank of Southfield, 518 F. Supp. 495, 497-498 *Page 148 
(E.D.Mich. 1981); Society of New York Hospital v. AssociatedHospital Service of New York, 367 F. Supp. 149, 155 (S.D.N Y 1973); United States v. Donlon, 355 F. Supp. 220, 225 (D.Del. 1973), aff'd, 487 F.2d 1395 (3d Cir. 1973). Once the movant established the absence of any genuine issue of material fact, the defendants' naked assertion that they contested the validity of the bank's computations, without more, was insufficient to create a genuine issue of fact, especially in light of Raymond Evans's letter to the bank dated ten days before suit was filed admitting the existence of the debt.
The defendants also argued that the summary judgment should have been denied pending a determination of the value of the collateral held by the bank. We disagree. Upon default, a secured party in possession of collateral is not precluded from taking a judgment on the note. The rights of a secured party are cumulative. Section 7-9-501 (1), Code of Alabama. The existence of collateral does not affect the amount of the debt; it merely provides one means of enforcing payment. See, e.g.,Everett v. Parts, Inc., 4 Ark. App. 213, 628 S.W.2d 875 (1982);Ceres Fertilizer, Inc. v. Beekman, 209 Neb. 447, 308 N.W.2d 347
(1981); McCullough v. Mobiland, Inc., 139 Ga. App. 260,228 S.E.2d 146 (1976).
Although the court's order requires the bank to credit any amounts received in payment on the collateralized accounts receivable, the defendants argue that they are left to rely on the bank's good faith in crediting their account. Their contention that the bank can, with impunity, collect the same debt twice ignores the protection afforded by § 7-9-502 (2), which requires that if the bank undertakes to collect on the obligations held as collateral it must proceed in a commercially reasonable manner and must account to the defendants for any surplus. Section 7-9-502 (2), Code of Alabama; Major's Furniture Mart v. Castle Credit Corp.,449 F. Supp. 538 (E.D.Pa. 1978), aff'd, 602 F.2d 538 (3d Cir. 1979);Foster v. Knutson, 84 Wn.2d 538, 527 P.2d 1108 (1974). See also §§ 7-9-207, 7-9-504 (2).
The defendants also question whether it was proper to enter a judgment against the estate of Sue Evans before any administration of the estate was begun. They point out that the non-claim statute, § 43-2-131, generally prevents the filing of an action against an administrator or an executor until six months after the grant of letters of administration or letters testamentary.
Although the non-claim statute is ordinarily a defense to an action prematurely filed, the statute does not go into effect, and hence is not a defense, where there has been no administration of the estate. Trotter v. Brown, 232 Ala. 147,150, 167 So. 310, 312 (1936) (on rehearing); Merchant'sNational Bank v. McGee, 108 Ala. 304, 307, 19 So. 356, 357
(1895). When no administrator has been appointed, an administrator ad litem must be appointed to represent the estate. Section 43-2-250, Code of Alabama.
We have examined the other contentions of the defendants and find them to be similarly meritless. The judgment is due to be, and hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and BEATTY, JJ., concur.