PER CURIAM.
 

 In 1977 plaintiff-appellee C.I.T. Corporation loaned a substantial sum of money to the defendant-appellant Duncan Grading and Construction, Inc. (Duncan). Defendants-appellants Lloyd K. Duncan, Inc., Lloyd K. Duncan and Betty J. Duncan guaranteed the loan. The loan was secured by a number of pieces of heavy equipment. In 1981 Duncan defaulted and C.I.T. repossessed the equipment and sold it. The proceeds were applied to Duncan’s debt, but, when interest and expenses were included, there was a deficiency. C.I.T. sued Duncan for the deficiency. Duncan defended on the grounds that the sale was not commercially reasonable under the Uniform Commercial Code.
 

 With the consent of the parties, trial was held before a magistrate
 
 [1]
 
 pursuant to 28 U.S.C. § 636(c). The court found for C.I.T. and awarded C.I.T. an amount which took into account the balance due on the loan, interest, expenses of the repossession and sale, and the sale proceeds. Duncan appeals, arguing that, the sale was not commercially reasonable, that the court used an improper method to calculate interest, and that the magistrate had no jurisdiction to hear the case since § 636(c) is unconstitutional.
 

 Duncan’s argument that § 636(c) is unconstitutional is without merit. This court has recently upheld the validity of § 636(c).
 
 Lehman Bros. Kuhn Loeb Inc. v. Clark Oil,
 
 739 F.2d 1313 (8th Cir.1984) (en banc).
 

 The U.C.C. as enacted in Missouri requires that every aspect of a sale of repossessed collateral be “commercially reasonable.” Mo.Ann.Stat. § 400.9-504(3) (Vernon 1965). Duncan argues that in several respects the sale conducted by C.I.T. was unreasonable. However, the magistrate’s finding that the sale was commercially reasonable is a finding of fact and thus will be upheld by this court unless it is clearly erroneous. Fed.R.Civ.P. 52(a);
 
 Nathanson v. United States,
 
 702 F.2d 162, 165 (8th Cir.),
 
 cert. denied,
 
 — U.S.-, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983).
 

 Repossession of the equipment was accomplished by C.I.T. over the course of several weeks. The equipment was located in the vicinity of Pacific, Missouri, but not all the pieces were in the same place; thus several trips were required. Once the equipment was located, it was discovered that some pieces had flat tires, others were without starters, and still others had been welded together, requiring partial disas-sembly with a blow torch. It appears that the appellant failed to cooperate in mar-shalling the foreclosed property, and may have purposely scattered and hidden some of the equipment. The equipment was taken to a yard in Illinois where C.I.T. customarily relocated repossessed heavy equip
 
 *361
 
 ment. The equipment was advertised for sale by auction in the St. Louis Post-Dispatch, the St. Louis Globe-Democrat, and the Contractors Daily Hot Line. These advertisements contained the statement that the sale could be cancelled or postponed without notice. A few bidders turned out for the sale, but bids, were low and C.I.T. bid in the equipment for $80,000.00. C.I.T. later sold the equipment to C.L. Wessell for $118,500.00. Duncan’s account was credited with $118,500.00.
 

 Duncan contends that the sale was not commercially reasonable in several ways. First, Duncan contends that the equipment was worth $200,000.00 and that C.I.T. could have gotten a better price if the equipment had been sold in Missouri instead of an Illinois. Second, Duncan argues that C.I.T. damaged the equipment in repossessing it and displayed it as “junk” rather than as operating equipment. Finally, Duncan objects to the statement in C.I.T.’s ads that the sale was subject to cancellation without notice.
 

 The magistrate found that the equipment was worth between $100,000.00 and $120,000.00. While there is some evidence in the record that the equipment was worth more, there is substantial support for the magistrate’s finding. Further, the fact that a better price might have been obtained by a sale at a different time or under different circumstances does not necessarily make a sale commercially unreasonable.
 
 Piper Acceptance Corp. v. Yarbrough,
 
 702 F.2d 733, 735 (8th Cir.1983). At any rate, as the magistrate noted, Duncan presented no proof indicating that the equipment could have sold for a higher price had it been sold in Missouri. Finally, Duncan received credit for $118,500.00, well within the range of the equipment’s value.
 

 The evidence does show that certain pieces of the equipment were disassembled during repossession, and that the equipment was not reassembled for the auction. The magistrate’s findings indicate that only necessary disassembly of equipment was done, and this conclusion is supported by the record. Further, the U.C.C. allows for the collateral to be sold in “its then condition or following any commercially reasonable preparation.” Mo.Ann.Stat. § 400.9-504(1). Thus a creditor may, but is not required to, repair, improve, or otherwise spruce up collateral before it is sold. As the magistrate pointed out, C.I.T. was not required to enhance the quality of collateral before selling it.
 

 Duncan’s final argument concerning the commercial reasonableness of the sale is about the statement in C.I.T.’s advertisements that the sale could be cancelled without notice. Duncan presented some evidence that other companies conducting auctions did not include this statement in their ads, and that the statement discouraged potential bidders from attending the sale.
 

 The magistrate stated that he was “troubled” by this practice, and we share his concern. From the evidence presented by Duncan, it seems possible that some potential buyers would be deterred from attending the sale. This would be of special concern if C.I.T. had a history of can-celling sales, a fact alleged by Duncan but for which there is no support in the record, if the equipment was sold for a low price, or if there were other questionable circumstances surrounding the sale. However, in this case we are unable to disagree with the magistrate that the sale was commercially reasonable. First, while the auction price was low, Duncan was credited with the amount for which C.I.T. resold the equipment, and that amount was approximately what the equipment was worth. Second, the sale was attended by some potential buyers. Third, the advertisement included a phone number which interested bidders could call for further information. Considering all these factors, we cannot conclude that the magistrate was clearly erroneous in his finding that the sale was commercially reasonable.
 

 Duncan’s final contention is that the magistrate used an improper method to calculate interest. We have reviewed the record and find that the method used by
 
 *362
 
 the magistrate is the method used by C.I.T. in the ordinary course of business. While it is a complex method, it was fully explained during trial by C.I.T. witnesses. The magistrate’s calculations were not clearly erroneous.
 
 [2]
 

 The magistrate’s findings of fact were not clearly erroneous. Therefore the judgment is affirmed.
 

 [1]
 

 . The Honorable David D. Noce, United States Magistrate, Eastern District of Missouri.
 

 [2]
 

 . Duncan also contends that C.I.T. did not prove its expenses. While C.I.T.’s expenses of repossessing the equipment were high, they are supported in the record. The magistrate carefully examined C.I.T.'s claims, and disallowed one claim as unsupported by the evidence. His findings on this issue are not clearly erroneous,