**LENDAL LEASING, LTD.,**
**Plaintiff-Respondent,**

v.

**FARMER'S WAYSIDE STORES, INC.,**
**and Rudolph & Doris Meyer,**
**Defendants-Appellants.**

**No. 50807.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 28, 1986.

Rehearing Denied Dec. 3, 1986.

Lee Young, Daniel M. Buescher, St. Louis, for defendants-appellants.

Steve Kuenzel, Washington, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Lendal Leasing, Ltd. (Lendal) brought suit for a deficiency judgment on a "commercial open ended lease" on a copier machine and a walk-in cooler against Farmer's Wayside Stores, Inc. (Farmer's) as primary debtor, against Rudolph Meyer as guarantor of the lease on both items, and against Doris Meyer as guarantor of the lease on the copier. After a jury verdict, the trial court entered judgment for Lendal against all three defendants in the amount of $914.20 for the copier deficiency and against defendants Farmer's and Rudolph Meyer in the amount of $7,050.64 on the

cooler lease and $2,000 in attorney's fees. Defendants appeal. We affirm in part and reverse in part.

On November 5, 1982, Lendal and Farmer's entered into a "Commercial Open End Lease" for a copier machine valued at $3,885. Contemporaneously Rudolph Meyer, the president of Farmer's and Doris Meyer, Rudolph's spouse and an employee of Farmer's, executed a guaranty for the lease. Then, on May 3, 1983, Lendal and Farmer's agreed to a lease for a walk-in cooler, valued at $15,713.40 which Rudolph Meyer guaranteed. Farmer's soon after went into default on the lease payments. On November 1, 1983, Lendal sent the following letter:

November 1, 1983

Rudy Meyer
Farmer's Wayside Stores Inc.
Hwy 100
Villa Ridge, Missouri 63089
Dear Mr. Meyer;

Notice is hereby given that Farmer's Wayside Stores Inc. is in default of Leases; 5, and 35.

Please have the 3M copy Machine, covered by lease # 5, availible [sic] for surrender on Friday November 18th.

Please void the Walk in cooler, covered by lease # 35, of all property and stores so that the cooler may be sealed on Friday November 18th.

Bids may be recieved [sic] anytime before 3 P.M. December 1st at 900 E 8th Street, Washington, Missouri 63090. Please refer to your lease for your minimum bid.

Sincerely;

(signed: Warren J. Swoboda)
Warren J. Swoboda
LENDAL LEASING LTD.

cc. Centere [sic] Bank, Pacific

Three persons bid on the copier. On May 8, 1984, after telephonically notifying defendants of the sale, Lendal sold the copier for $2,200. After crediting for the lease's "reserved portion" (the equivalent of principal) in the payments previously made by defendants, there remained a $914.20 deficiency. Lendal's witness George Linne explained that in arranging the sale he contacted several businesses which he believed were interested in such property. He stated that he did not recall if he had advertised the sale of the copier.

The sale of the walk-in cooler proved more problematic. Only two bids were received despite Lendal's advertising and verbal contacts with area businesses. Sheila Vogelsang, who had acquired the Farmer's building from an area bank, instructed Lendal to dismantle and remove the walk-in cooler. However, she then offered Lendal $7,000 for it, which was accepted. The agreed value of the cooler was $15,713.40 which, after giving credit for the sale price and the "reserve portions" for lease payments, resulted in a deficiency of $7,050.64.

Appellants, in essence, raise five points on appeal. Points relied on I and II allege: First, that Lendal failed to provide them with reasonable notice in accordance with RSMo 400.9–504(3) (1978); second, that Lendal failed to dispose of the copier and cooler in a commercially reasonable manner as required by RSMo 400.9–504(3) (1978) and third, that Lendal failed to abide by the contract terms for disposition of collateral. Point relied on III argues that there was a failure of consideration for the lease since $5,100 of the $15,713.40 agreed value of the walk-in cooler represented a debt for past services and a charge for future services provided by two of Lendal's shareholders. Point relied on IV asserts the same lack of consideration for Doris and Rudolph's signature on the guaranty. Point relied on V is a summary of the above, asserting that Lendal failed to make a submissible case.

■ Before proceeding further, we must decide whether the two leases come within the contemplation of Article Nine of the Uniform Commercial Code. Article Nine "applies to security interests created by contract, including ... lease[s] ... intended as security." RSMo 400.9–102(2) (1978). "The real character of the document is not determined from its technical form but from the intentions of the parties." *Clune*

*Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106, 108 (Mo.App.1981). Here, where Lendal filed a financing statement on the walk-in freezer, where the residual values of the two items at the end of the lease were very low ($389 for the cooler and $1 for the copier), and where the testimony indicated that these transactions were intended to be secured installment sales clothed in lease terminology, we hold that Article Nine applies.

RSMo 400.9–504(3) (1978) provides in part:

> Disposition of the collateral may be by public or private proceedings ... but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.... [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

■ Appellants contend that Lendal did not provide them with proper notice of the resale as required by RSMo 400.9–504(3) and therefore Lendal cannot obtain a deficiency judgment. *Gateway Aviation, Inc. v. Cessna Aircraft,* 577 S.W.2d 860, 863 (Mo.App.1978). It is true that the burden of proof on sufficiency of notice falls on Lendal. *First National Bank and Trust Co. v. Newman,* 680 S.W.2d 767, 770 (Mo. App.1984). Appellants also cite to us *Executive Financial Services, Inc. v. Garrison,* 535 F.Supp. 263 (W.D.Mo.1982) aff'd, 722 F.2d 417 (8th Cir.1983) which holds a Missouri court interpreting RSMo 400.9–504(3) (1978) would mandate that reasonable notice be written notice. Appellants then contend that since *Garrison* precludes us from considering any verbal notice as sufficient notice, the only conceivable notice is the letter sent by Lendal to Farmer's. They then argue that as this letter is deficient in several aspects, Lendal failed to carry its burden of proof as required by *Newman* and therefore no deficiency judgment can be allowed.

■ We agree with the U.S. District Court for the Western District of Missouri and the 8th Circuit Court of Appeals view that the U.C.C. requires that the notice to be given by the lender to the debtor must be written. RSMo 400.9–504(3) says that "reasonable notification ... shall be sent." RSMo 400.1–201(38) states:

> 'Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed.

It has been remarked that "it is most difficult to fit an oral message" into the definition of send. J. White & R. Summers, Uniform Commercial Code 1112 (2d ed. 1980). The draftsman did not substitute another verb such as "notifies" or "gives" for the term of "send," *See* RSMo 400.1–201(26). Therefore, we conclude that RSMo 400.9–504(3) requires written notice before a lender can obtain a deficiency judgment from a debtor.

■ Next we must decide whether the written notice sent by Lendal was reasonable. Here there was substantial evidence to support a finding that Lendal accomplished a private sale. Private sales require only "reasonable notification of the time after which any private sale or other intended disposition is to be made." Appellants pick away at the notice, and, indeed, it is not a model for creditors to imitate. But remembering our standard of review which gives all favorable inferences to the evidence supporting the verdict, it is apparent that Lendal informed appellants (Farmers and Rudolph Meyer) that the sale would occur, as it did, after 1 December 1983. The waiting period was not improperly short but was one month and appellants were provided sufficient information.

■ We are troubled by the fact that Lendal's letter was not addressed to Doris Meyer. As a guarantor of the copier "lease," she is a debtor and is entitled to notice. *Clune,* 615 S.W.2d at 108. Lendal's addressed the letter to Rudolph Meyer at Farmer's. Therefore it never *sent*

Doris Meyer notice. That Mrs. Meyer be a corporate officer, or that it might be reasonable for one to infer that, in all probability her husband informed her of the letter is immaterial. It is incumbent upon the lender to send notice. It did not and that portion of the judgment against Doris Meyer is reversed.

■ Appellants next attack the sale as being commercially unreasonable. We disagree. Commercial reasonableness of the resale is a fact question. *C.I.T. Corporation v. Duncan Grading and Construction, Inc.,* 739 F.2d 359, 360 (8th Cir.1984). Regarding the copier, the evidence showed that Lendal contracted three potential buyers before selling; that it waited a substantial period of time holding on to an otherwise unproductive asset before selling instead of dumping it on the market for a quick and cheap sale; and that the machine, now used and depreciated, sold for $2,200.

■ Regarding the walk-in cooler, we also find substantial evidence to support a finding of commercial reasonableness in that would have been wasteful to expend labor and materials to remove the cooler and repair any damage that might have been done to the building now owned by Mrs. Vogelsang. Lendal and appellants were not dealing from any position of strength and it is idle speculation to propose that ripping the cooler from the building, disassembling it, storing it until sold, expending new material and labor to install it elsewhere once it would be sold would have produced a greater net price and lower deficiency for the appellants. Indeed, it appears that the action of Lendal was the only commercially reasonable alternative.

Appellants next attack the method of resale as being inconsistent with the method contractually imposed by the lease itself. The record does indicate that Lendal did not fully comply with the lease provisions in two ways. One, it secured only two bidders for the cooler instead of three as required and it provided only verbal and not written notice, return receipt requested, of the highest bid received. However, appellants did not include this point in their motion for a new trial. Paragraph 2 of that motion only speaks as to supposed error in the notice as required by the Uniform Commercial Code. It does not refer to the contractual notice provision. Therefore, appellants point is not preserved for appeal. Rule 78.07. Further, appellants do not show they were prejudiced by receiving verbal instead of written notice.

Appellants' next point is that the agreed value of the walk-in cooler contained a $5,100 cost which was for past and future accounting services. They state there was no consideration for the inclusion of this amount in the lease and therefore, the lease agreement fails.

■ Appellants owed a local consulting firm money for previous services. Two of the partners in the firm were also shareholders in Lendal. Lendal paid the debt and provided for an advance for future services to the consulting firm and then included that sum in the cooler lease. So, in reality, consideration flowed both ways. Appellants were no longer liable to the consulting firm and had a credit for future services. Lendal in turn, had security, albeit woefully inadequate, for their advances. Further, it must be remembered that this was only part of the contract. Appellants received consideration when Lendal financed the cooler. This point is denied.

■ Appellants attempt to extend this mistaken consideration argument to the issue of whether Rudolph and Doris Meyer received consideration for their guarantying the leases of Farmer's. Obviously if there as no consideration for their signature then the guaranty fails, but, again, this is not the case. Farmer's received consideration in that Lendal financed the acquisition of equipment for it. While this consideration flowed to the debtor corporation and not directly to the Meyers as individuals, that is considered sufficient consideration for the guaranty. *Hoffman v. Franklin County Mercantile Bank,* 666 S.W.2d 446, 450 (Mo.App.1984).

As Lendal failed to send reasonable notification to Doris Meyer, that portion of the judgment rendered against Doris Meyer is reversed. As Lendal sent Farmer's and Rudolph Meyer reasonable notice of the time after which private sale would be made, disposed of the collateral in a commercially reasonable manner and provided consideration for the cooler lease and guaranty, the judgment against Farmer's and Rudolph Meyer is affirmed.

CRANDALL and KAROHL, JJ., concur.