**TWIN ARROW SERVICES, INC.,**
**Plaintiff–Respondent,**

v.

**Robert E. JOHNSON,**
**Defendant–Appellant.**

No. 15681.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 20, 1988.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 14, 1988.

Application to Transfer Denied Jan. 17, 1989.

Gene A. Hilton, Hilton and Bennett, Camdenton, for defendant-appellant.

Gary L. Smith, Lebanon, for plaintiff-respondent.

HOLSTEIN, Chief Judge.

Twin Arrow Services, Inc. (Twin Arrow) sued Robert E. Johnson and his wife alleging, in separate counts, default on a promissory note and nonpayment of insufficient funds checks. Following a trial to the court, judgment was entered in favor of Johnson's wife on both claims. However, judgment was entered for Twin Arrow and against Johnson on both claims. On the promissory note claim, the judgment included principal, interest, and attorney's fees totaling $17,959.68. Judgment was entered on the claim for insufficient funds checks in the sum of $1,117.96.

Johnson appeals claiming the trial court erroneously found that Johnson had waived notice of the time and place of a public sale of collateral which had been repossessed by Twin Arrow. Johnson asserts that the no-tice must be in writing and the waiver of a proper notice is prohibited, citing *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417, 418 (8th Cir.1983), *Lendal Leasing v. Farmer's Wayside Stores*, 720 S.W.2d 376, 379 (Mo.App.1986), *Boatmen's Bank of Nevada v. Dahmer*, 716 S.W.2d 876, 877 (Mo.App.1986), and §§ 400.9–501 and –504, RSMo 1986. Based upon this authority, Johnson argues that Twin Arrow's failure to give notice of the sale of the collateral following repossession precludes a deficiency judgment.

The evidence at trial showed that Johnson leased a service station from Twin Arrow in Camdenton, Missouri, beginning in 1981. While operating the business, Johnson purchased gasoline, inventory, and supplies from Twin Arrow on an open account. By January of 1983, Johnson had fallen seriously in arrears on the account. To pay the past-due amounts, an agreement was reached that Johnson would sign a note representing the amount then due Twin Arrow.

On February 1, 1983, Johnson executed a promissory note in the sum of $11,968.72 payable in installments of $200 monthly. The note provided for interest at 9% per annum and attorney's fees upon default. It was secured by personal property located at and used in the operation of the service station.

Subsequently, Johnson issued several checks to Twin Arrow for the purchase of goods. The checks were returned to the corporation due to insufficient funds on deposit in the Johnsons' bank account.

No payments were made on the note, none of the checks were made good, and Johnson fell behind on his rent. As a result, Twin Arrow's attorney sent a notice to Johnson on August 1, 1983, directing Johnson to remove himself from the service station within ten days and reminding Johnson that "all the property presently on the premises ... is secured.... Should you dispose of any of those items, we will ask the prosecuting attorney ... to have you arrested...."

After the notice was sent, Twin Arrow's president, Larry Schafer, met with Johnson

at the service station. A mutual decision was made to hold an auction of the collateral. Johnson selected an auctioneer to hold the sale, contacted the auctioneer, and made arrangements for the sale, which of necessity included instructions as to the time and place of the sale. Johnson also directed that Twin Arrow be shown as the owner in the sale advertisement and directed the auctioneer to make the check for the proceeds of the sale payable to Twin Arrow. No representative of the corporation met or talked with the auctioneer prior to the day of sale. Both Johnson and Schafer were present at the sale held October 22, 1983. Following the sale, the auctioneer gave a check to Schafer for $1,072, the net proceeds of the sale, which was applied to the outstanding balance on the promissory note.

The only significant factual controversy relates to when Johnson returned the service station keys to Twin Arrow. According to Schafer, Johnson had exclusive possession of the keys to the station and, consequently, possession of the secured property until after the sale. Johnson claimed to have given up the keys on the tenth day following receipt of the eviction notice.

■ After default on a secured debt and acquisition of possession of the collateral by a secured party, the event triggering a duty to give notice of the time and place of a sale of the collateral is an intended sale by the secured party. §§ 400.9–503 and –504, RSMo 1986. There is uncontroverted evidence of Johnson's intimate involvement in arranging and controlling the sale. Further, the trial court was entitled to believe the evidence that Johnson retained the keys to the building which contained the collateral until after the sale was held, and the trial court was entitled to disbelieve contradictory testimony. Rule 73.01(c)(2)[1] and *Alice v. Ronald,* 683 S.W. 2d 307, 310 (Mo.App.1984). The trial court may have properly concluded that the sale was a disposition by Johnson of property in his possession and not a disposition of repossessed property by Twin Arrow requiring written notice of the time and place of sale.

■ No findings of fact were requested. Notwithstanding Johnson's assertion to the contrary, no findings of fact were made.[2] Where no specific factual findings are made, such facts are treated as having been found in accordance with the result reached. Rule 73.01(a)(2). There was substantial evidence to support a finding that Twin Arrow did not repossess the collateral nor did it conduct a public sale requiring notice of time and place to Johnson. That finding is consistent with the resulting judgment. Consequently, Twin Arrow is not precluded from obtaining a judgment for the balance due on the note and the insufficient funds checks. The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.

---

1. All rule references are to Missouri Rules of Court (19th ed. 1988).

2. Before reading his minute entry, the trial judge made the following observations:

> [A]s I can best determine from the evidence I've heard, [Johnson] actually picked the date and established the times.... I think you can [ ] determine ... that it was his sale.... [E]ven if it was [Twin Arrow's] sale it would seem to me if ever a case of waiving any type of notice, that would exist if in fact the debtor ... at all times was involved in the planning of the sale.... I suppose one might argue that the sales bills themself [sic] was a notice.... [W]ithout having to decide whose sale it was, the finding that I have entered is as follows....

The trial judge then read the judgment on each claim. From the context of the judge's remarks, he did not intend and we do not take them to be findings of fact.