Floyd OPP, Plaintiff and Appellee,

v.

Willard NIEUWSMA, Defendant,

and

Herman Welter, Defendant
and Appellant.

Nos. 16603, 16616.

Supreme Court of South Dakota.

Argued Nov. 28, 1989.
Decided July 3, 1990.

Charles Kornmann, Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for plaintiff and appellee.

Willard Nieuwsma, Pollock, pro se.

Thomas A. Kolker, Maloney, Kolker, Fritz, Hogan & Johnson, Ipswich, and Dave Hughes, Cascade, Iowa, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This action, arising out of a cattle sale, was filed in the Fifth Judicial Circuit Court for McPherson County on March 16, 1981. Pursuant to a Motion for Change of Venue, the case was transferred to Campbell County.

On August 10, 1981, Appellant Herman Welter (Welter) moved to dismiss the action on the grounds, inter alia, that he did not have sufficient minimum contacts with the State of South Dakota to vest the courts with jurisdiction over him. However, Welter did not set the motion for hearing. Appellee Floyd Opp (Opp) served joint interrogatories on September 2, 1981. Judge Hall entered an order on October 12, 1982, holding that the court had jurisdiction over the subject matter and the defendants. Opp set a hearing for October 30, 1981, which, among other things, included a motion to compel Welter to answer interrogatories. On October 30, 1981, Judge Hall directed Welter to obtain a hearing date on his motion to dismiss. Nothing was done by Welter. On November 2, 1982, the interrogatories were answered in part. On November 16, 1982, Welter filed an answer to the complaint.

On January 10, 1984, Opp filed a Certificate of Readiness for Trial. Welter objected on the grounds that discovery had not been completed.[1]

On August 3, 1984, Opp filed a second Certificate of Readiness for Trial. Welter

---

1. On February 15, 1983, Charles Poches, Jr. gave notice of withdrawal as one of the attorneys for the Defendant Willard Nieuwsma. Nieuwsma's lead attorney, Mr. Grenz, was burned and hospitalized for months. Nieuwsma has used five different attorneys through the course of this action. Delay ensued therefrom.

again objected. An Order was entered by Judge Berndt on September 7, 1984, setting the case for trial on October 23, 1984.

Thereafter, all parties stipulated to reset the trial date for December 5, 1984. On December 14, 1984, the court reset the trial to begin on March 5, 1985. The court directed all counsel to complete the pretrial conference checklist prior to trial.

On February 11, 1985, Nieuwsma moved for a continuance. He was scheduled to enter a federal penitentiary in March of 1985. The trial was continued indefinitely by agreement of all parties. During the next 20 months, Welter filed a motion to suppress and served interrogatories on Opp. Opp served answers to the interrogatories on December 30, 1987. During the next 11 months, both Opp and Welter delayed this action by filing various motions and objections, and the failure to serve their pretrial conference checklists. On November 18, 1988, Welter moved to dismiss the action for failure to prosecute. That motion was denied by the court on November 29, 1988.

The trial finally commenced on December 12, 1988. The jury returned a damage verdict on December 20, 1988, in favor of Opp for $24,726.21. All post-trial motions made by Opp and Welter were denied. On appeal Welter argues:

(1) That he did not have sufficient minimum contacts with South Dakota to cause him to be subject to the jurisdiction of South Dakota courts;

(2) That the circuit court clearly abused its discretion in refusing to dismiss this case for claimed failure to prosecute;

(3) That the notices of breach of warranty were insufficient and untimely, as a matter of law; and,

(4) That he did not receive a fair trial.
–Holding–

■ We reject Welter's arguments and accordingly affirm. Opp has filed a notice of review but has failed to argue it in his brief. A question not briefed by counsel

will not be considered by the Supreme Court, even if argued at bar. *Tri–State Auto Auction v. Ostroot*, 76 S.D. 356, 78 N.W.2d 468 (1956).

## FACTS

In March of 1979, Welter, who resides in Onslow, Iowa, purchased a group of holstein heifers and apparently had those cattle vaccinated for bangs on June 8, 1979.[2] In November of 1979, Nieuwsma, who is from Pollock, South Dakota, bought 46 head of those cattle from Welter. On November 8, 1979, Opp, who is also a South Dakota resident, purchased 45 head of cattle from Nieuwsma. (Welter admitted that 42 or 43 of the 45 head Welter sold to Nieuwsma were resold to Opp). Opp received health papers on the cattle in May of 1980.

Opp decided to sell the cattle in May of 1980. Because Opp wanted to ship the cattle out of the United States, they had to pass a blood test. The cattle showed up as "suspects" or "reactors" to brucellosis. When Opp had the cattle tested, some cattle had high "titers." According to Opp, overage vaccination of the cattle caused these problems. Nine of the animals were quarantined in writing. A verbal quarantine was in effect from the federal veterinarian, Dr. Furhman, as to Opp's entire dairy herd. Dr. Fuhrman told Opp that if he attempted to sell any of the dairy herd without clearance, the entire cattle herd, including the beef herd as well, would be officially quarantined in writing.

Per Opp's testimony, he eventually lost a sale of the cattle and was required to feed and care for the cattle because of the failure of the animals to pass the blood tests. Opp could not safely sell the cattle since any sale would have been in violation of SDCL 40–7–1 (unauthorized disposition of diseased livestock). When the quarantine

2. It appears that Dr. McGrory, Welter's personal veterinarian, falsely certified as to the age of the cattle and falsely certified that he had vaccinat- ed the cattle because he was out of town when the actual vaccination took place and he never inspected the cattle.

was lifted, Opp eventually sold all the cattle.[3]

## DECISION

1. *Welter had sufficient minimum contacts with South Dakota to cause him to be subject to the jurisdiction of South Dakota courts under SDCL 15–7–2.*

■ Welter first asserts, that since he has never been in South Dakota or transacted any business in South Dakota, no personal jurisdiction exists. Specifically, Welter argues that his contacts with the State of South Dakota are insufficient to "pass constitutional muster."[4] In support of his contention, Welter insists that he did not do any act or consummate any transaction in the State of South Dakota. He further insists that since he has never been in the State of South Dakota, he could not have engaged in any activity which would give rise to a cause of action. Finally, Welter advocates that no contacts, no presence, no solicitations, and no activities in South Dakota have been shown.

Opp submits, to the contrary, that Welter had sufficient minimum contacts with South Dakota to cause him to be subject to the jurisdiction of South Dakota courts. In support of his contention, Opp cites the following facts: Welter was informed at the time of the sale that the cattle he sold would eventually reach South Dakota; Welter misrepresented to South Dakota officials the age of the cattle, both at the time of vaccination and their entry into South Dakota; Welter contacted a carrier and had the cattle shipped to South Dakota; Welter had post-sale negotiations over certain disputed cattle with Nieuwsma of South Dakota.

Therefore, the first issue before us is whether these "contacts" are sufficient to give South Dakota personal jurisdiction over Welter.[5] Our second inquiry is whether an assertion of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[6] *State v. American Bankers Ins. Co.*, 374 N.W.2d 609 (S.D. 1985).

■ We now apply the principles set out for determining if a given set of circumstances provides sufficient minimum contacts between a nonresident defendant and a forum state to support personal jurisdiction. *State v. American Bankers Ins. Co.*, 374 N.W.2d 609 (S.D.1985). First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Ventling v. Kraft*, 83 S.D. 465, 161 N.W.2d 29 (1968). Second, the cause of the action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one. An important factor bearing upon the reasonableness of asserting juris-

---

3. One on 5–4–80, nine on 7–21–80, eight on 8–16–80, six on 8–27–80, seven on 9–17–80, three on 11–2–80, ten on 12–5–80, and one died on 11–8–80.

4. Welter admits that he probably sold cattle on two prior occasions, which were destined for South Dakota, and that he sent the animals involved in the present case to South Dakota at the direction of Nieuwsma who paid the freight on them.

5. SDCL 15–7–2. **Acts within the state subjecting persons to jurisdiction of the courts.** Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:

(1) The transaction of any business within the state;

6. In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court held that states could exercise jurisdiction if the nonresidents had such "minimum contacts" with the state "that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The test is whether the defendant had "fair warning" of being sued in the forum state, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). The defendant is deemed to have "fair warning" if it has "purposefully directed" its activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

diction is to determine if defendant's conduct and connection with the forum state are such that he would have reasonably anticipated being brought into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In the present case, Welter admitted in his affidavit that he was informed at the time of the sale that the cattle he sold would eventually reach South Dakota. He sent the Iowa Health papers to South Dakota, representing to South Dakota officials that the cattle met the requirements of SDCL 40–7–20.[7] Furthermore, Welter contacted a carrier and instructed the cattle be shipped to South Dakota, although he did not pay for the shipping. He received a check drawn on the Campbell County Bank in South Dakota. This check was sent to Welter from South Dakota and was paid in South Dakota. Welter made telephone calls to Nieuwsma in South Dakota. Welter also had post-sale negotiations over seven disputed cattle with Nieuwsma, a resident of South Dakota. The instant cause of action clearly arose from Welter's activities directed at South Dakota. He could reasonably have expected to be responsible in a South Dakota court in the event something went wrong with the South Dakota bound cattle. We conclude that the minimum contacts test is met in the instant case and that the trial court properly asserted personal jurisdiction over Welter without any due process violations.

II. *The circuit court did not abuse its discretion in refusing to dismiss this case for failure to prosecute.*

 Welter argues that this action should have been dismissed for failure to prosecute. In reviewing the trial court's denial of defendant's motion to dismiss, our inquiry is whether the circuit court abused its discretion. *Holmoe v. Reuss,* 403 N.W.2d 30 (S.D.1987), *citing Duncan v. Pennington County Housing Authority,*

382 N.W.2d 425 (S.D.1986). Although the power to dismiss for failure to prosecute is a discretionary power, it should be exercised cautiously and granted only in cases of an unreasonable and unexplained delay in prosecution. *Duncan* at 427. We have observed that the mere passage of time is not the test ... but whether, under all the facts and circumstances of the particular case, the plaintiff is chargeable with want of due diligence in failing to proceed with reasonable promptitude. *Chicago and Northwestern Ry. Co. v. Bradbury,* 80 S.D. 610, 612–613, 129 N.W.2d 540, 542 (1964).

Welter submits that nine and one-half years elapsed between the time of the alleged improper vaccination of the cattle and the time of trial. He states that there is no justification for the various delays during that period. We disagree.

Although there was a long delay, the circumstances of this case seem to justify it due to the actions of *both* parties. A review of the lengthy procedural history indicates that both parties delayed this action by their acts. On two occasions, Welter objected to Opp's Certificate of Readiness for Trial. Both parties filed a great number of motions, i.e., Welter's Motion to Dismiss for lack of personal jurisdiction. Both parties were trying to locate missing witnesses. Under these circumstances, the circuit court did not abuse its discretion in denying Welter's motion to dismiss for lack of timely prosecution.

III. *The notices of breach of warranty were not, as a matter of law, insufficient or untimely.*

 SDCL 57A–2–607(3)(a) requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525 (S.D.1986).

On September 4, 1980, Welter received a letter from Opp's counsel indicating that

7. This statute forbids female cattle being shipped into South Dakota unless they are calf-hood vaccinated against brucellosis.

Opp was offered $1,085 per animal in May of 1980. He was unable to proceed with any sale because some of his animals were quarantined by the South Dakota Livestock Sanitary Board. Counsel indicated that Opp had sustained a loss and would sustain further losses if he is unable to dispose of his animals.

The letter must be examined to determine whether it was notice within a reasonable time. SDCL 57A-1-204(2) states: "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." The purpose of requiring notice within a reasonable time is to give the seller sufficient time to investigate the breach of warranty claim while facts are still fresh. *Vander Eyk v. Bones*, 77 S.D. 345, 91 N.W.2d 897 (1958).

Even though Opp's September 4, 1980, letter was roughly four months after he discovered the problem with his cattle, under the circumstances we conclude that the notice of breach was given within a reasonable time. A review of the record, in a light favorable to the verdict,[8] reveals that there was a question as to the status of some or all of the animals. It seems that the veterinarians involved were not sure whether or not Opp's cattle were diseased or whether the problem was caused by overage vaccinations or by the cattle having been vaccinated twice or both. There were many questions left for Welter to answer. Welter had an opportunity to investigate the claim because the cattle were still ill when he received the letter.

Under these circumstances, we hold that the notice of breach was neither insufficient nor untimely.

IV. *Welter received a fair trial.*

The final issue involves whether the trial court erred in receiving evidence which Welter claims should have been excluded. Specifically, Welter complains about evidence received as to a verbal herd quarantine and argues that there was no evidence of any defect in the animals.

At a Motion in Limine, Welter attempted to prevent the introduction of evidence of the verbal quarantine which was imposed upon Opp by the veterinarian. This motion was premised upon the basis that the notice received by Welter made no mention of the verbal quarantine and that all quarantines must be in writing. Welter states the interjection of such matters was highly prejudicial. We disagree, finding no error with the trial court's ruling. A trial court's evidentiary rulings are presumptively correct. In reviewing the trial court's ruling, we must determine if the trial court abused its discretion. *Shamburger v. Behrens*, 380 N.W.2d 659 (S.D. 1986).

Welter provides no authority for the proposition that Opp must give written notice of verbal quarantine. SDCL 40-5-8 and SDCL 40-5-10 provide that written notice must be given to the owner or keeper of livestock when a quarantine is in effect. Therefore, Opp is entitled to the written quarantine notice, not Welter. Opp must only give notice of the breach of warranty in a sufficient and timely manner. Further, Welter asserts that since all quarantines must be in writing, the trial court should have excluded evidence of the verbal quarantine. Although written notice of quarantine is mandated by statute, in this case we hold that written notice as to some of the livestock is written notice as to all the livestock. We must keep in mind the underlying evil which these notice statutes seek to control, the spread of disease in livestock. Brucellosis is a highly communicable disease. It was probable that all Opp's livestock were asymptomatic or inapparent carriers of brucellosis. The verbal quarantine of the remaining livestock is justified in a case such as the present one. Therefore, there was no abuse of discretion.

Even if the trial court did err, it was not of such magnitude that it affected Welter's right to a fair trial. We deem that it was insignificant at best. It is clear that Welter was not deprived of his right to

---

**8.** *Farmers State Bank v. Westrum*, 341 N.W.2d   631, 634 (S.D.1983).

a fair trial by the trial court's denial of his Motion in Limine.

Welter also argues that there was no evidence of any defect in the animals. All the arguments and contentions relating to the defects in the animals were presented to the jury. They determined that many of the animals were unable to pass the South Dakota Livestock Sanitary Board testing procedures, creating a lost opportunity to sell the cattle and in turn, an increase in Opp's expenditures.

Reviewing the evidence in the light most favorable to the verdict, *Farmers State Bank, supra,* we affirm the trial court on this issue.

Affirmed.

All the Justices concur.