1998 SD 41

**Bonnie LONDON, Plaintiff and Appellant,**

v.

**Clarence M. ADAMS (deceased), Defendant and Appellee.**

**Nos. 20004, 20021.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1997.

Decided April 29, 1998.

Lee C. "Kit" McCahren of Olinger, Lovald, Robbennolt & McCahren, Pierre, for plaintiff and appellant.

Thomas H. Harmon and Karla Engle of Tieszen Law Office, Pierre, for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Bonnie London sued Clarence M. Adams for damages arising out of a car accident between the two parties. After a substantial period of inactivity, London's new counsel moved for a default judgment and Harmon moved for dismissal for lack of prosecution. Both motions were withdrawn by agreement when it was learned that Adams had died prior to the filing of the motion. After subsequent, extensive file activity, London's case was conditionally dismissed for lack of prosecution. The trial court conditioned the dismissal on payment of partial attorney fees to McCahren because of the extensive work that was done on the case after the motion to dismiss was withdrawn the first time and because Harmon had led London to believe that the case would be argued on the merits or settled. Both parties appeal. We reverse and remand.

## FACTS

[¶ 2.] On October 21, 1989, an automobile accident occurred between London and Adams, which resulted in personal injuries and property damage. Adams (insured) compensated London for the damage to her vehicle, but did not do so for her personal injuries or lost income. On October 16, 1992, London filed a summons and complaint against Adams asking for damages arising from the accident and alleging Adams caused the accident by failing to obey a stop sign and failing to yield in a controlled intersection.

[¶ 3.] London's attorney at that time, Mark Meierhenry, sent a letter to Adams' insurance representative granting an unlimited amount of time to file an answer while settlement could be considered. The letter provided that the informal extension could be terminated on fifteen days' notice. The informal extension for filing an answer was never revoked and Adams never filed an answer.

[¶ 4.] Meierhenry filed a motion to withdraw as counsel over a year and half after the complaint was filed. Next, the record reflects that counsel for Adams, Thomas H. Harmon, made his first appearance on October 3, 1995. On October 5, 1995, Harmon then filed the first motion to dismiss for failure to prosecute even though no answer had ever been filed.

[¶ 5.] On October 24, 1995, Lee C. "Kit" McCahren filed a notice of appearance on London's behalf along with interrogatories and a motion for default judgment. However, both the motion to dismiss and the motion for default judgment were withdrawn by agreement of the parties when it was learned that Adams had died. The parties agreed to return the case to its status as it existed prior to the filing of the motions.

[¶ 6.] The case proceeded from that point with the parties exchanging extensive correspondence. McCahren advised Harmon in a letter dated November 6, 1995, that he would be pursuing the case. On December 27, 1995, McCahren forwarded a copy of London's medical report and requested that Harmon "advise within two weeks as to whether your people would like me to make settlement demand, schedule this matter for mediation or go forward with the pending litigation." By letter dated January 11, 1996, Harmon responded as follows:

> Since receiving your letters, I have had an opportunity to consult with a company representative. *I am authorized to state that State Farm is interested in mediation as a possible method for resolving this situation.* Before that decision can be made, it will be necessary to review any documen-

tary support your client may have to support her claim. Specifically, we would require documentary proof of any alleged loss of income, as well as complete medical records on Ms. London for the period from three years prior to the accident to the present date. This should include all records referred to in Dr. Cho's report. Once that material is received, a decision regarding whether mediation is appropriate in this situation can be made. (Emphasis added.)

Thereafter, McCahren continued to press for mediation, while Harmon reiterated his need for further documentation regarding London's claim. Harmon was provided medical information about London in letters dated February 12 and 22, 1996, and he again declined mediation in a February 29 letter, but requested documentation of "economic loss." On March 21, 1996, McCahren submitted documents relating to London's lost income and further stated: "I intend to go forward at this time and get a new defendant properly named. I am planning on the wife of Mr. Adams. Do you have any input before I file that motion?" Harmon responded by contending there was no basis for naming Mrs. Adams as a defendant and requested that McCahren direct any communications for Mrs. Adams to him.

[¶ 7.] Shortly thereafter, a dispute arose over whether the time for substitution of a party had expired. Harmon contended that McCahren had failed to substitute a party within ninety days after a suggestion of death had been made on the record, as required by SDCL 15–6–25(a)(1). McCahren argued that no suggestion of death had been formally served on him, so the time period for substituting a party could not have run. The trial court ultimately concluded that a proper suggestion of death had not been made and that the ninety-day period for substituting a party had not run. The court reasoned that, due to the death of his client, Harmon was not a representative of a party as contemplated by SDCL 15–6–25(a)(1) and, therefore, was without power to make a proper suggestion of death on the record.

[¶ 8.] After a proper suggestion of death was made, the trial court permitted McCahren to name Mrs. Adams as a special administratrix of the estate of her husband (Estate) and to substitute Estate as the defendant in London's lawsuit. Harmon agreed not to contest this appointment as long as London would assume all the costs of opening and closing the Estate. The Estate was then prepared by McCahren.

[¶ 9.] After Estate was in place and substituted as a party to the lawsuit, Harmon filed a motion to dismiss on Estate's behalf on grounds of failure to prosecute. This was essentially the same motion that Harmon had withdrawn a year earlier. The trial court found an inexcusable delay in the prosecution of London's case in the nearly three-year period from the time of the filing of the complaint until she obtained new counsel. However, the circuit court was troubled by the extensive work that had been done on the case since the first motion to dismiss and the fact that Harmon, also Estate's counsel, had continued to argue the case on the merits. The circuit court, in using its discretion to consider the motion for dismissal, felt dismissal would only be proper if compensation was made for certain attorney fees and expenses incurred by London after withdrawal of the first motion to dismiss. The court ultimately ruled that the Estate should pay London's attorney fees and costs in the amount of $2,788.60, which represents fees and costs incurred from October 27, 1995, through April 8, 1996. This was the period of time when mediation was sought by London, seemingly entertained by Estate,[1] and wage and medical information was requested and forwarded. Thus, the circuit court granted the motion to dismiss on the condition that Estate partially reimburse London, otherwise the case would be allowed to proceed on its merits. The Estate chose to pay the fees and costs and the case was dismissed.

[¶ 10.] London brings this appeal raising the following issue:

---

1. Technically, the Estate was not set up at this point. However, Adam's attorney continued to act on behalf of State Farm Insurance Company, which provided coverage for Adams and later his Estate.

·Did the trial court abuse its discretion when it dismissed appellant's case for lack of prosecution?

[¶ 11.] By notice of review, Estate submits the following issue:

Did the trial court properly assess fees and costs against the Estate as a condition precedent to the court dismissing plaintiff's case?

## STANDARD OF REVIEW

■. [¶ 12.] ·Review of a trial court's dismissal of a claim for failure to prosecute is performed under the abuse of discretion standard. *Devitt v. Hayes*, 1996 SD 71, ¶ 7, 551 N.W.2d 298, 300 (citing *Annett v. American Honda*, 1996 SD 58, ¶ 12, 548 N.W.2d 798, 802; *Opp v. Nieuwsma*, 458 N.W.2d 352, 356 (S.D.1990); *Du–Al Mfg. Co. v. Sioux Falls Constr. Co.*, 444 N.W.2d 55, 56 (S.D. 1989); *Schwartzle v. Austin Co.*, 429 N.W.2d 69, 71 (S.D.1988); *Holmoe v. Reuss*, 403 N.W.2d 30, 31 (S.D.1987); *Duncan v. Pennington County Hous. Auth.*, 382 N.W.2d 425, 426 (S.D.1986)). This standard is met, and the trial court's dismissal cannot stand, when the decision "is not justified by, and clearly against, reason and evidence." *Devitt*, 1996 SD 71, ¶ 7, 551 N.W.2d at 300 (citing *Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D. 1991); *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981); *Root v. Bingham*, 26 S.D. 118, 120, 128 N.W. 132, 133 (1910)). We will not reverse a decision if "we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." *Rosen's, Inc., v. Juhnke*, 513 N.W.2d 575, 576 (S.D.1994) (citing *Myron v. Coil*, 82 S.D. 180, 185, 143 N.W.2d 738, 740 (1966) (other citations omitted)). Several guiding principles of law also inform this Court's review of a dismissal for failure to prosecute:

First, this Court ordinarily will not interfere with the trial court's rulings in these matters. *Duncan*, 382 N.W.2d at 427; *Simkins v. Bechtol*, [86 S.D. 187, 189] 192 N.W.2d 731, 732 (1971).

Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. *Opp,* 458 N.W.2d at 356; *Schwartzle*, 429 N.W.2d at 71; *Holmoe*, 403 N.W.2d at 31; *Duncan*, 382 N.W.2d at 427; *Simkins*, 192 N.W.2d at 732; *Chicago & Northwestern R. Co. v. Bradbury*, 80 S.D. 610, 129 N.W.2d 540, 542 (S.D.1964). An unreasonable and. unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights." *Bradbury,* 129 N.W.2d at 542 [ (citation omitted) ].

Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. *Opp,* 458 N.W.2d at 356; *Schwartzle*, 429 N.W.2d at 71; *Holmoe*, 403 N.W.2d at 31; *Duncan*, 382 N.W.2d at 427; *Bradbury*, 129 N.W.2d at 542.

Fourth, the plaintiff has the burden to proceed with the action. *Du–Al Mfg. Co.,* 444 N.W.2d at 56; *Schwartzle*, 429 N.W.2d at 71; *Duncan*, 382 N.W.2d at 427; *Simkins,* 192 N.W.2d at 732; *Potts*, 72 N.W.2d at 925. The defendant need only meet the plaintiff step by step. *Holmoe*, 403 N.W.2d at 31.

Finally, dismissal of the cause of action for failure to prosecute should be granted when, after considering all the facts and circumstances of the case, the plaintiff can be charged with lack of due diligence in failing to proceed with reasonable promptitude. *Opp,* 458 N.W.2d at 356; *Holmoe,* 403 N.W.2d at 31–32; *Duncan,* 382 N.W.2d at 427; *Bradbury,* 129 N.W.2d at 542.

*Dakota Cheese, Inc. v. Taylor,* 525 N.W.2d 713, 715–16 (S.D.1995).

## DECISION

### *Failure to Prosecute*

■ [¶ 13.] A trial court may dismiss civil cases "where there has been no activity for one year, unless good cause is shown to the contrary." SDCL 15–11–11; *see Devitt*, 1996 SD 71 at ¶ 12, 551 N.W.2d at 300; *Annett*, 1996 SD 58 at ¶ 22, 548 N.W.2d at 802; *Schwartzle*, 429 N.W.2d at 71. Furthermore, "a defendant may file for dismissal of an

action or of any claim against him" if the plaintiff fails to prosecute his or her case. SDCL 15–6–41(b); *see Devitt,* 1996 SD 71 at ¶ 12, 551 N.W.2d at 301. As is obvious from the statutory language, there is no absolute right to have a case dismissed merely by passage of time. Nevertheless, the circuit court dismissed the case before us under both rules.

[¶ 14.] The circuit court, after consideration of the motion to dismiss, allowed the defendant a choice between two alternatives: (1) Either the defendant could pay certain costs and attorney fees of the plaintiff incurred during the time after withdrawal of the first motion to dismiss and have the motion to dismiss granted, or (2) the motion would be denied and the case would proceed. At the outset, then, it is notable that the court discounted any possibility of outright dismissal. The court expressed its concern about the possibility of dismissal to Harmon at the hearing, stating:

> [I]t seems to me as a matter of discretion, I've got some problems in here saying after we've all spent this much time on this file that we should go back and now dismiss it after you had made that motion back in '95 and now we all spent a lot of time on this file and now you're asking me to reconsider something that I should have ruled on back in 1995.

Also, the attempt to fashion a compromise order by allowing payment of fees and costs that are not provided for by statute [2] evidences the circuit court's overwhelming reluctance to dismiss this case. Furthermore, the circuit court obviously felt that dismissal would be improper when it concluded at the

hearing that "the Court exercises its discretionary powers and looking at the substantial amount of work that has been accomplished between the time of [the] appearance [of McCahren] and today believes that it would be unconscionable to grant the motion[.]" We accept the circuit court's characterization of the possible dismissal for failure to prosecute as "unconscionable" under these circumstances. Therefore, we find that the circuit court abused its discretion when it ultimately granted the motion to dismiss.

[¶ 15.] Our decision, bolstered by the circuit court's conclusions at the motion hearing, also finds support in the facts of the case. Even after Adams died and the motion to dismiss was first withdrawn, Harmon continued to act and respond as if the merits of the case were still in issue. McCahren inquired in a letter dated November 6, 1995, shortly after the first motion to dismiss was withdrawn, whether Adams' "people ... want to litigate, mediate, or discuss settlement concerning this matter." Harmon's response came in a January 11, 1996, letter where he explained that he was "authorized to state that State Farm is interested in mediation as a possible method for resolving this situation." Harmon's letters in early 1996 dated January 11, January 31, February 14, February 29, March 6, and March 22, all concerned the possibility of settlement discussions and mediation or the documentation needed to facilitate settlement. Our review of this extensive correspondence between counsel indicates that there was the appearance that once the party substitution was made the case was going to be contested on its merits.[3]

---

**2.** The general rule is that "attorney fees may only be awarded by contract or when explicitly authorized by statute." *Schuldies v. Millar,* 1996 SD 120, ¶ 37, 555 N.W.2d 90, 100 (citing *O'Connor v. King,* 479 N.W.2d 162, 166 (S.D.1991); *First Bank of South Dakota v. Haberer Dairy & Farm Equip., Inc.,* 412 N.W.2d 866, 874 (S.D.1987); *Ofstad v. S.D. Dep't of Transp.,* 387 N.W.2d 539, 540 (S.D.1986)). As the circuit court's award of fees and costs lacked a statutory basis, it was improper. *Schuldies,* 1996 SD 120, ¶ 38, 555 N.W.2d at 100 (holding that the power to award attorney fees cannot be implied, but must be based on a clear legislative grant of power) (citing *Haberer,* 412 N.W.2d at 874; *Lowe v. Steele Constr. Co.,* 368 N.W.2d 610, 615 (S.D.1985);

*City of Aberdeen v. Lutgen,* 273 N.W.2d 183, 185 (S.D.1979)).

**3.** Also of note in this case is the open-ended extension of time given to Adams to file his answer. Courts have held that an agreement extending the time within which to answer is a reflection of the parties intent to defer action in the case and that dismissal for failure to prosecute is, therefore, precluded. *Wheeler v. Payless Super Drug Stores,* 193 Cal.App.3d 1292, 238 Cal.Rptr. 885, 892 (1987); *General Ins. Co. of Am. v. Superior Ct. of Alameda Cty.,* 15 Cal.3d 449, 124 Cal.Rptr. 745, 541 P.2d 289, 292 (1975), *but see Waxman v. Boren, Elperin, Howard & Sloan,* 221 Cal.App.3d 519, 270 Cal.Rptr.

[¶ 16.] In response to the requests of Harmon, London gathered and forwarded medical and economic loss information and tried, unsuccessfully, to arrange a mediation session. After still further requests by Harmon for more medical information, McCahren replied in a letter dated March 7, 1996, indicating that he had already sent all the medical records available to him. As to economic loss information, McCahren wrote Harmon a letter dated March 21, 1996, indicating that he had provided Harmon with the best evidence available and that anything further could be explained to the jury. All correspondence thus indicates this case was being postured for settlement or possibly trial. The circuit court concluded as much when it noted the following: "It looks to me like Plaintiff's counsel would have been led to believe that the insurance carrier was willing to resolve this matter on the merits by all this correspondence that you've had about mediation and discovery and medical records." As other jurisdictions have held, "the right to a dismissal may be waived if there is conduct indicating a willingness on defendant's part to try the case on the merits notwithstanding the delay, or if he is a party to, or causes the delay." *State ex rel. State Highway Comm'n v. Graeler*, 495 S.W.2d 741, 743 (Mo.Ct.App.1973) (quoting *Pennsylvania R. Co. v. City of Pittsburgh*, 335 Pa. 449, 6 A.2d 907, 912 (1939)) (alterations omitted). This is only fair, considering the injustice that may result if courts, attorneys, and clients are lulled into expending time, money, and effort in maintaining actions on their merits at the request of defendant only to have the defendant revive a stale claim of failure to prosecute thereafter. *Cf. Tunender v. Minnaert*, 1997 SD 62, ¶ 14, 563 N.W.2d 849, 852 (holding plaintiff could reasonably assume that defendant was waiving or extending the time for hearing when defendant, himself, requested continuance that resulted in violation of time for appeal). As this Court has aptly noted, "[o]ur goal is justice and 'the clearance of dockets and calendars is of secondary concern in the ad-

ministration of justice.'" *Bradbury*, 80 S.D. at 612, 129 N.W.2d at 542 (citation omitted).

■ [¶ 17.] In upholding the circuit court's rationale, but not its outcome, we are mindful that "a motion to dismiss for failure to prosecute may be granted despite the fact that a plaintiff is currently prosecuting his claim." *Devitt*, 1996 SD 71, ¶ 13, 551 N.W.2d at 301 (citing *Simkins*, 86 S.D. at 191, 192 N.W.2d at 733). Of course, the notion that it "may be granted" calls upon the discretion of the judge to make the determination. There is no absolute right to dismissal for a plaintiff's failure to prosecute. In South Dakota, the trial court "*may* dismiss any civil case for want of prosecution." SDCL 15–11–11 (emphasis added). Likewise, "a defendant may file for dismissal of an action or of any claim against him" if the plaintiff fails to prosecute his or her case, but obviously the judge retains the discretion to deny the motion. *See* SDCL 15–6–41(b). Under the facts of this case, justice requires that it be decided on its merits.

[¶ 18.] Based on our holding on the first issue, we do not need to address further the issue raised in the notice of review except to note that the award of costs and attorney fees should be returned.

[¶ 19.] The order of dismissal and award of attorney fees and costs is reversed and the case is remanded for further proceedings consistent with this opinion.

[¶ 20.] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

---

540, 542–43 (1990). The courts conclude that the mutual agreement of the parties for an extension of time to answer establishes mutual intent

"to excuse [each] other from diligence both in answering and taking default." *Wheeler*, 238 Cal.Rptr. at 889.